# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| LUISA AVILES, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>MESSERLI & KRAMMER P.A. and JEFFERSON CAPITAL SYSTEMS LLC,<br><br>    Defendants. | Case No.: 20-cv-0056<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

3. Plaintiff Luisa Aviles is an individual who resides in the Western District of Wisconsin (Dane County). She previously resided in Milwaukee County.

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff debts allegedly incurred for personal, family, or household purposes.

5. Defendant Messerli & Krammer, P.A. ("Messerli") is a law firm with its principal place of business located at 3033 Campus Drive, Suite 250, Plymouth, MN 55441.

6. Messerli is engaged in the business of a debt collection agency and law firm, using the mails, telephone, and judicial process to collect consumer debts originally owed to others.

7. Messerli is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. Messerli is a debt collector as defined in 15 U.S.C. § 1692a.

9. Defendant Jefferson Capital Systems, LLC ("JCS") is a foreign limited liability company and debt collection agency with its principal place of business located at 16 McLeland Road, St. Cloud, Minnesota 56303.

10. JCS is engaged in the business of collecting debts, both owed to others and acquired after default, and incurred for personal, family or household purposes.

11. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

12. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Tepper v. Amos Fin., LLC,* 898 F.3d 364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist.

LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *Torres v. LVNV Funding LLC*. 2018 U.S. Dist. LEXIS 49885, at *13-15 (N.D. Ill Mar. 27, 2018); *Hordgev. First Nat'l Collection Bureau, Inc.*, 2018 U.S. Dist. LEXIS 132435, at *12-13 (S.D. Tex. Aug. 7, 2018); *Meola v. Asset Recovery Solutions*, 2018 U.S. Dist. LEXIS 139101, at *13-18 (E.D.N.Y. Aug. 15, 2018).

13. The primary purpose of JCS' business, and JCS' principal purpose, is the collection of consumer debts. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)); *Torres*, 2018 U.S. Dist. LEXIS 49885, at *12-15 ("Because [the debt buyer's] principal (indeed, only) business purpose is to purchase debts and then collect on them, they clearly qualify as debt-collectors under the first definition.").

14. JCS' website contains an "About Jefferson Capital" webpage, which states:

> Founded in 2002, Jefferson Capital is one of the nation's leading purchasers and servicers of consumer charged off and bankruptcy receivables including both secured and unsecured assets. Jefferson Capital's growing client base includes Fortune 500 creditors, banks, telecommunications providers, credit card issuers, private student loan originators, and auto finance companies. Jefferson Capital is headquartered in St. Cloud, Minnesota with additional operations in Minneapolis, Minnesota, Denver, Colorado and Basingstoke, United Kingdom.

http://www.jeffersoncapitalinternational.com/us/about-jefferson-capital.html (accessed January 14, 2020).

15. In addition to telephone and mail-based debt collection activities, JCS is a frequent litigant in Wisconsin courts. A general search on Wisconsin Circuit Court Access

("CCAP") for JCS returns the error message: "Your request could not be processed. Your search has returned more than 5000 rows. Please try again."

16.     CCAP shows that JCS *filed* 28 civil and small claims actions in Wisconsin in December 2019 alone. Upon information and belief, virtually all or actually all of those cases are collection actions against Wisconsin consumers.

17.     JCS is a debt collector as defined in 15 U.S.C. § 1692a.

18.     A company meeting the definition of a "debt collector" (here, Jefferson) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## **FACTS**

19.     Sometime prior to March 2, 2017, Plaintiff obtained a "Fingerhut"-brand credit account, which was issued by Webbank and used only for personal, family, and household purposes.

20.     On March 2, 2017, Messerli filed a small claims action in Milwaukee County Circuit Court against Plaintiff in connection with an alleged default of this account on behalf of its client, JCS. The case was styled *Jefferson Capital Systems, LLC c/o Messerli & Kramer PA v. Luisa Aviles*, Case No. 2017SC006245 (Milw. Cnty. Cir. Ct.).

21.     A default judgment was entered on April 26, 2017, in the amount of $2,090.95, plus costs, totaling $2,403.95.

22. On or about October 14, 2019, Messerli mailed Plaintiff a copy of an Earnings Garnishment in connection with the small claims action. A copy of this Earnings Garnishment is attached to this complaint as Exhibit A.

23. Exhibit A contains the following:

**THE STATE OF WISCONSIN, to the garnishee:**

The creditor has been awarded a court judgment that has not been paid. As a result, the creditor claims that the amount owed by the debtor is as follows.

| | |
|---|---|
| Unpaid balance on judgment | $2,814.56 |
| Unpaid post-judgment interest | included in the above |
| Estimated costs of this earnings garnishment | $131.00 |
| Total amount owed by the debtor | $2,945.56 |

Exhibit A.

24. Exhibit A states that the "Unpaid balance on judgment," including "Unpaid post-judgment interest" is $2,814.56.

25. Exhibit A further states that the "Estimated costs of this earnings garnishment" are $131.00, and the "Total amount owed by the debtor" as of October 14, 2019 is $2,945.56.

26. Exhibit A is confusing and misleading as to the amount, character, and legal status of the debt.

27. Based on the Wisconsin post-judgment interest statutes, the statutory rate of post-judgment interest for judgments entered on April 26, 2017 is 4.75%.

28. Based on a statutory rate of post-judgment interest of 4.75%, a judgment in the amount of $2,403.95 would incur approximately $280.00 during the approximately 900-day span between April 26, 2017 and October 14, 2019.

29. Thus, the sum of the judgment amount, plus the statutory post-judgment interest amount would be about $2683.00.

30. The sum of the judgment amount, plus the statutory post-judgment interest amount, $2683.00 is approximately $131.00 less than the amount sought in Exhibit A.

31. Upon information and belief, Exhibit A also seeks $131.00 in costs incurred in connection with a prior garnishment proceeding that was contested and in which Plaintiff was determined to be the prevailing party as a result of an exemption from garnishment.

32. Upon information and belief, when Plaintiff was determined to be the prevailing party, there was no finding that Defendants were entitled to costs of the proceeding.

33. When Plaintiff called the Civil Records department in the Milwaukee County Circuit Court and asked the representative to review the paper docket sheet associated with the Order entered following the Contested Earnings Garnishment Hearing on August 1, 2018, the representative informed Plaintiff that, after reviewing the paper docket sheet, she did not see any statements in the Garnishment Findings & Conclusions docket sheet indicating that Defendants were entitled to an award of costs in connection with the contested garnishment proceeding.

34. Further, even assuming Defendants were entitled to an award of costs in connection with the prior garnishment, the failure to identify or itemize the costs associated with the prior garnishment falsely implies to the unsophisticated consumer that the statutory post-judgment interest rate is greater than 4.75%. *See, Hahn v. Triumph P'ships*, 557 F.3d 755, 757 (7th Cir. 2009) (explaining that the application of an incorrect interest rate is material).

35. Although Exhibit A employs a standard-form document that "shall not be modified," the standard-form document expressly allows Defendants to "supplement" Exhibit A with "additional material" to avoid confusion about the calculation of the sums due:

6

Exhibit A.

36. Where a debt collector uses a standard-form document, it must "tailor boilerplate language to avoid ambiguity." *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 371 (7th Cir. 2018).

37. Moreover, Exhibit A is dated October 14, 2019 but the docket entries for the garnishment proceedings did not occur until November 4, 2019.

38. As Defendants had not actually incurred the costs of the garnishment at the time Exhibit A was mailed—let alone had those costs entered in their favor—Defendants unfairly overstated the amount of the debt. *See, Veach v. Sheeks*, 316 F.3d 690, 693-94 ("by assuming the outcome of future events in drafting his notice, Sheeks ran afoul of the FDCPA."); *see also, Hoffman v. Keith D. Weiner & Assoc. Co., L.P.A.*, No. 19-c-0019, 2019 U.S. Dist. LEXIS 66112, at *10-11 (E.D. Wis. Apr. 18, 2019) (discussing *Veach v. Sheeks*).

39. Plaintiff was confused and misled by Exhibit A.

40. Plaintiff had to spend time and money investigating Exhibit A and the consequences of any potential responses to Exhibit A.

41. Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibit A.

### The FDCPA

42. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Sols.*, No. 17-cv-1671, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018); *Pogorzelski v.*

7

*Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after Spokeo, have rejected similar challenges to standing in FDCPA cases.") (citing *Hayes v. Convergent Healthcare Recoveries, Inc., 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016))*; *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems

important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

43. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

44. Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication

9

misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

45. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt.

46. 15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

47. 15 U.S.C. § 1692e(10) specifically prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

48. 15 U.S.C. § 1692f generally prohibits a debt collector from using "any unfair or unconscionable means to collect or attempt to collect any debt."

49. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

## COUNT I – FDCPA

50. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

51. Exhibit A is confusing and misleading to an unsophisticated consumer as to the amount, character, and legal status of the alleged debt, and attempts to collect amounts greater than the actual amount of the debt owed as of the date of Exhibit A.

52. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, and 1692f(1).

## CLASS ALLEGATIONS

53. Plaintiff brings this action on behalf of a Class, consisting of:

> (a) all natural persons in the State of Wisconsin (b) who were sent an Earnings Garnishment notice in the form represented by Exhibit A, (c) seeking to collect costs incurred in connection with a Prior Earnings garnishment that was denied because the natural person was exempt from garnishment, (d) where the alleged debt was initially incurred for personal, family, or household purposes, and (e) the Earnings Garnishment notice was mailed between January 14, 2019 and January 14, 2020, inclusive, (f) and was not returned by the postal service.

54. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

55. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

56. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

57. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

58. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

59. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 14, 2020

**ADEMI & O'REILLY, LLP**

By: s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com